Filed 7/21/26  In re Wilian J. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re WILIAN J. et al., Persons Coming Under the Juvenile Court Law. | B347725 |
| | (Los Angeles County Super. Ct. No. 25CCJP00496A, B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| NORMA P., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mark A. Davis, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louie, Assistant County Counsel, and Jessica S. Mitchell, Principal Deputy County Counsel, for Plaintiff and Respondent.

---

## INTRODUCTION

Norma P. appeals from the juvenile court's jurisdiction findings under Welfare & Institutions Code section 300, subdivisions (b) and (d), and disposition orders declaring her children, Wilian J., Jr. and Martha J., dependent children of the court.[1] Norma argues substantial evidence did not support the court's findings that there is a substantial risk Wilian Jr. and Martha will be sexually abused by their father, Wilian J.; that Norma failed to adequately protect Wilian Jr. and Martha from sexual abuse; and that Wilian Jr. and Martha suffered, or there is a substantial risk they will suffer, serious physical harm or illness, as a result of Norma's failure to protect them. Because substantial evidence supported the court's jurisdiction findings, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Police Investigate and Arrest Wilian*

Norma P. and Wilian have two children, Wilian Jr. and Martha, who were 10 years old and four years old, respectively,

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

2

when the Department filed a petition under section 300. When Norma and the children moved to the United States in 2018, they joined Wilian, who was living in the home of his aunt, Martha M. Several of Wilian's relatives also lived in the home, including Martha M.'s daughter Donay and Donay's daughters Cataleya and Ashlyne (and three other children). Wilian's family shared one bedroom; Donay and her children occupied another.

In April 2024 Cataleya, who was then 11 years old, reported to a forensic nurse that Wilian had molested her numerous times between the ages of five and seven. Cataleya stated that, in one instance, Wilian rubbed her vagina under her clothing. Cataleya said that on another occasion, while Norma was nearby but not paying attention, Wilian put his hands down Cataleya's pants, rubbed her vagina, and put his finger in his mouth. Cataleya said Wilian also groped her breasts and buttocks over her clothing. Cataleya stated she also saw Wilian slap Ashlyne on the buttocks and put his hands down her pants.

In August 2024 Ashlyne, who was then 16 years old, told police that when she was 11 or 12 years old Wilian showed her a pornographic video of a naked woman performing sexual acts. Ashlyne learned from her brother that Wilian had shown him the same video. Ashlyne also described several occasions where Wilian touched her thighs, grabbed her breasts, and touched her buttocks. On one occasion Wilian "tried to kiss her, and [told] Ashlyne . . . to close her mouth but [she] could feel his tongue all over her face." On another Wilian slapped Ashlyne's buttocks in front of her sister, an incident Cataleya confirmed. Ashlyne said that, because she and Cataleya shared their experiences, Ashlyne knew Wilian also sexually abused Cataleya.

Ashlyne also stated that, when she was 12 years old, Wilian came into her room and tried to unbuckle her pants while Wilian's adult daughter, Helen, slept nearby.  Ashlyne ran out of the room and told her mother, Donay.  Donay confronted Ashlyne's grandmother and Wilian about the abuse.  Wilian denied the allegations, and the grandmother accused Ashlyne of lying and convinced Donay not to call the police.  Ashlyne's maternal aunt, Leslie, believed Ashlyne's allegations because Wilian also did "weird things to her, such as taking pictures of her through the window while she was changing."  After this incident, Donay moved Ashlyne and Cataleya out of the home.

In June 2024 Donay called Wilian and accused him of inappropriately touching Cataleya and Ashlyne.  Wilian denied touching either of them and refused to apologize for something he said he did not do.  He called Cataleya a liar and stated that, "as her mother, she [meaning Donay] should know this."  Wilian, however, admitted that, on one occasion when he was drunk, he showed Ashlyne (but not Cataleya) a "porno video" of two women kissing, while Norma and Helen were sitting nearby.  Wilian asked Donay for forgiveness.

When the police interviewed Wilian, he denied showing Ashlyne anything inappropriate.  When one of the officers questioning Wilian said she had listened to his June 2024 phone conversation with Donay, Wilian changed his story.  Wilian initially admitted that, while drunk, he showed Ashlyne a picture of a shirtless male and that she ran out of the room crying.  Later, however, Wilian said he showed a video of an adult male wearing very little clothing (but with his penis covered) "dancing sexy."

In February 2025 the police arrested Wilian for willfully and lewdly committing a lewd and lascivious act upon the body of a child under the age of 14 (Pen. Code, § 288, subd. (a)), sexually penetrating a child under the age of 14 by means of force or violence (*id.*, § 289, subd. (b)), and knowingly exhibiting harmful matter that depicts a minor engaging in sexual conduct (*id.*, § 288.2, subd. (a)).  The police reports stated that several years earlier Wilian had abused his minor cousins, Cataleya and Ashlyne.  Wilian denied that he had abused his cousins and that he had access to the two children while he lived with them.  The police contacted the Los Angeles County Department of Children and Family Services.  Shortly after his arrest, Wilian was deported to El Salvador.

B.      *The Department Files a Petition Under Section 300*

The Department filed a section 300 petition on behalf of Wilian Jr. and Martha, alleging that they suffered, or there was a substantial risk they will suffer, serious physical harm or illness as a result of Norma's failure to protect them; that there was a substantial risk Wilian will sexually abuse Wilian Jr. and Martha; and that Norma failed to adequately protect the children from sexual abuse.  The Department alleged two counts under section 300, subdivision (b)(1), and two counts under section 300, subdivision (d), based on these allegations.  The Department alleged that Norma failed to protect the children when she knew Wilian sexually abused his cousins and that she allowed Wilian to reside in the children's home with unlimited access to them.  The Department alleged such "sexual abuse of the cousin[s] by the father, and the mother's failure to protect the children, endangers the children's health and safety, creates a detrimental

5

home environment, and places the children at risk of serious physical harm [and] sexual abuse."

C.    *The Department Conducts an Investigation*

Norma told a Department social worker that she never saw Wilian behave inappropriately with Cataleya or Ashlyne.  Norma said that, though her family lived with Cataleya and Ashlyne, Norma's family did not interact with the girls during that time. Norma believed Wilian was innocent and stated "he has never been accused of anything like this before."  Norma described Wilian as a good parent and said she would allow him to return home after his release from jail.

Norma claimed she did not learn about the allegations of sexual abuse until after Wilian was arrested.  Norma stated: "I only ever saw him as a good dad to my kids.  I am having trouble assimilating what is being said there.  I don't know what could have happened.  I did not see it so I can't accuse him and say that he did it."  When asked what she thought of Wilian showing his young cousins a pornographic video, Norma said: "I don't know if it happened, maybe they took his phone, but he was never alone with them."  When asked whether Wilian's admission he showed the cousins the video changed her perception of him, Norma stated:  "Maybe but I don't think so, because he has always protected his family and cared for them. He has always been a good dad with his own children.  He hasn't done anything that you said he did or that he accepted he did. He has always protected them."  Norma said she did not feel her kids would be unsafe with Wilian because Wilian never acted inappropriately with them.  Norma stated that, if she could, she would accept Wilian back home.  She said: "If he made a mistake,

6

he needs to correct it and be different" by attending therapy and finding God.

The social worker interviewed Helen and Wilian Jr. Helen stated she heard about the allegations against Wilian, but insisted Wilian was incapable of doing those things. Helen said the cousins never told her about any sexual abuse. Wilian Jr. said he saw the police arrest Wilian and later learned about the sexual abuse allegations, but he denied Wilian ever sexually abused him.

In a telephonic interview with the social worker, Wilian (who was in El Salvador) repeatedly denied sexually abusing Cataleya or Ashlyne. He claimed Donay was "the problem," had "so many husbands," and "did not pay attention to her own kids," yet was making accusations against him. Contradicting Norma's statement she did not know or suspect Wilian was abusing his cousins until after he was arrested, Wilian admitted he told Norma about the sexual abuse allegations after his June 2024 phone call with Donay. Wilian said he did not have plans or enough money to return to the United States.

The social worker assessed the risk to Wilian Jr. and Martha of abuse and neglect as "Very High." The Department stated in its jurisdiction report Norma "demonstrates limited resilience as she has allowed [Wilian] to reside in the home and have access to the children despite knowing about the allegations." The Department stated Norma "does not appear to have insight as to the [effects Wilian's] actions can have on children. [Wilian] has shown sexually abusive tendencies towards other children, as such, his behaviors may escalate to other children in the household including his own." The Department concluded that, though Wilian did not abuse his

7

children, exposing them to such sexual abuse could cause them emotional harm, psychological harm, and trauma.

The Department also identified several additional risk factors. For example, according to Wilian, Norma learned about the sexual abuse allegations two years ago, yet she allowed Wilian access to their children. And despite the statements by Cataleya and Ashlyne, Wilian's arrest, and Wilian's admission he showed one of the cousins pornography, Norma did not believe Wilian sexually abused his cousins and her perception of him had not changed.

D. *The Juvenile Court Sustains the Petition, but Later Terminates Its Jurisdiction*

The juvenile court sustained the petition, declared Wilian Jr. and Martha dependent children of the court, and released them to Norma. Norma timely appealed.

At the six-month review hearing under section 366.21, subdivision (e), the juvenile court terminated its jurisdiction, finding the conditions that justified assuming jurisdiction under section 300 no longer existed. The court granted Norma sole legal and physical custody of both children.

**DISCUSSION**

A. *Norma's Appeal May Be Moot, but We Exercise Our Discretion To Hear It*

"A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the

8

matter in issue in the case before it.""'" (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).) A case is moot when events render it ""'"impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief."'" (*Ibid*.) "Effective" relief has two conditions. First, the plaintiff must complain of an ongoing harm. Second, the requested outcome must directly redress or rectify that harm. (*In re S.R.* (2025) 18 Cal.5th 1042, 1051 (*S.R.*); see *D.P.*, at p. 276.) This rule applies in dependency cases. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.) A reviewing court must ""'"decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in subsequent proceeding."'" (*S.R.*, at p. 1042; see *D.P.*, at p. 276.) But even where an appeal is moot, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P.,* at p. 282; accord, *S.R.*, at p. 1051.)

Norma's appeal is potentially moot for at least two reasons. First, neither Norma nor Wilian appealed from the juvenile court's jurisdiction finding Wilian sexually abused his cousins. "Dependency jurisdiction attaches to a child, not to his or her parent" (*In re D.M.* (2015) 242 Cal.App.4th at p. 634, 638), meaning the juvenile court may have jurisdiction based on a finding against one parent only. Thus, where, as here, the juvenile court makes jurisdiction findings regarding both parents, but the parents challenge the findings regarding only one of the parents, the appeal may be moot. (*D.P., supra*, 14 Cal.5th at pp. 283-284; see *In re M.C.* (2023) 88 Cal.App.5th 137, 150-151 ["'Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only.'"].) Thus, even if we reversed the finding Norma

9

failed to protect the children, the juvenile court would still have had jurisdiction over Wilian Jr. and Martha based on the findings regarding Wilian's conduct, and we could not provide Norma effective relief.  (See *D.P.,* at pp. 283-284; *M.C.*, at pp. 150-151.)

Second, while the appeal was pending, the juvenile court terminated its jurisdiction over the children and granted Norma sole physical and legal custody.  "An order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot."  (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; see *In re E.T.* (2013) 217 Cal.App.4th 426, 436 [an appeal "may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].)  However, "when a juvenile court's finding forms the basis for an order that continues to impact a parent's rights—for instance, by restricting visitation or custody—that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction." (*D.P.*, *supra*, 14 Cal.5th at p. 276.)  Conversely, when "the juvenile court terminates its jurisdiction without issuing any order that continues to impact the parents," "complaining of 'stigma' alone is insufficient to sustain an appeal.  The stigma must be paired with some effect on the [parent's] legal status that is capable of being redressed by a favorable court decision." (*Id.* at p. 277; accord, *S.R.*, *supra*, 18 Cal.5th at p. 1051.) "A reviewing court must "'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding.""" (*D.P.*, at p. 276; see *S.R.*, at p. 1051.)

10

"'[W]hen a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required.'" (*In re S.R.*, *supra*, 18 Cal.5th at p. 1052.) One such consequence is mandatory listing on the Child Abuse Central Index (CACI). (*S.R.*, at p. 1048; *D.P., supra*, 14 Cal.5th at p. 273.) Pursuant to the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.), a child protective agency "shall forward" for inclusion in the CACI every substantiated report of "child abuse or severe neglect." (Pen. Code, § 11169, subd. (a).) "'[I]nformation included in the CACI is available to a wide variety of state agencies, employers, and law enforcement,' and inclusion of a parent's conduct in the CACI carries significant consequences for the parent." (*S.R.*, at p. 1048., see *D.P.*, at p. 279.) "Where a juvenile court sustains an allegation of child abuse, a parent may later be estopped from challenging his or her inclusion in the CACI." (*S.R.*, at p. 1055; see Pen. Code, § 11169, subd. (e).)

Whether Norma is or may be subject to inclusion in the CACI is not an easy question; Wilian, not Norma, abused Cataleya and Ashlyne, but Norma knew about the abuse. The juvenile court found Norma "failed to protect the children when she knew of [Wilian's] sexual abuse of" the minor cousins and that she allowed Wilian "to reside in the children's home and to have unlimited access to the children." Norma's conduct falls somewhere between "severe neglect," which must be reported to the CACI, and "general neglect," which does not. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 281.)[2] But the Supreme Court has

---

[2] "'"Severe neglect" is defined as 'the negligent failure . . . to protect the child from severe malnutrition or medically diagnosed nonorganic failure to thrive,' or 'willfully caus[ing] or permit[ing] the person or health of the child to be placed in a situation such

11

emphasized, "appellate courts have discretion to conduct a merits review of the parent's claim even if the case is moot." (*S.R.*, *supra*, 18 Cal.5th at p. 1054.) We do that here.

### B.  *Substantial Evidence Supported the Juvenile Court's Findings Under Section 300, Subdivisions (b) and (d)*

#### 1.  *Applicable Law and Standard of Review*

Section 300, subdivision (b)(1), provides the juvenile court may exercise jurisdiction where a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child." Under this provision the child protective agency must prove "'(1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness.'" (*In re S.F.* (2023) 91 Cal.App.5th 696, 712; see *In re Cole L.* (2021) 70 Cal.App.5th 591, 601.)

Section 300, subdivision (b), requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re J.N.* (2021) 62 Cal.App.5th 767, 775), though the court need not wait until the child is abused or injured to assume jurisdiction and take steps to protect the child. (*In re Cole L.*,

---

that their person or health is endangered.' [Citation.] "'General neglect" means the negligent failure of a person having the care or custody of a child to provide adequate food, clothing, shelter, medical care, or supervision where no physical injury to the child has occurred but the child is at substantial risk of suffering serious physical harm or illness.'" (See *In re D.P.*, *supra*, 14 Cal.5th at p. 281.)

*supra*, 70 Cal.App.5th at p. 601.)  And a parent's "'[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'"  (*Id.* at pp. 601-602.) Nevertheless, ""[t]o establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.""" (*In re S.F.*, *supra*, 91 Cal.App.5th at pp. 712-713; see *In re J.A.* (2020) 47 Cal.App.5th 1036, 1048.)

We review the jurisdiction findings for substantial evidence.  (*L.C. v. Superior Court* (2024) 98 Cal.App.5th 1021, 1034; *In re A.L.* (2015) 243 Cal.App.4th 628, 645.)  We "draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence to the contrary."  (*A.L.*, at p. 645; see *In re C.V.* (2017) 15 Cal.App.5th 566, 571.)  "'We consider the entire record, drawing all reasonable inferences in support of the juvenile court's findings and affirming the order even if other evidence supports a different finding.  [Citation.]  We do not consider the credibility of witnesses or reweigh the evidence.'" (*In re L.B.* (2023) 88 Cal.App.5th 402, 411-412; see *In re S.F.*, *supra*, 91 Cal.App.5th at p. 713.)

> 2.     *Substantial Evidence Supported the Juvenile Court's Findings*

Substantial evidence supported the juvenile court's findings under section 300, subdivisions (b) and (d).  Wilian's sexual conduct toward his young cousins living in the same house posed a risk of harm to Wilian Jr. and Martha.  Norma's repeated denial Wilian abused the two girls, her lack of insight, and her refusal to ban Wilian from the home all supported the court's

13

finding she failed to protect the children from known sexual abuse. (See *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332 [substantial evidence supported jurisdiction findings under section 300, subdivisions (b), (d), and (j), where the father's sexual abuse of a cohabitant's 11-year-old daughter put the father's children at risk of harm]; *In re Y.G.* (2009) 175 Cal.App.4th 109, 116 [substantial evidence supported jurisdiction findings under section 300, subdivision (b), where the parent's abuse of a nonrelative child tended "to prove that the parent suffers from characteristics that also place the parent's child at substantial risk of similar abuse"]; see also *In re Cole C.* (2009) 174 Cal.App.4th 900, 917 [substantial evidence supported jurisdiction findings under section 300, subdivision (j), where the parent's abuse of other children in the household created a substantial risk of harm to the child].)

In addition, Norma repeatedly denied or minimized knowing that Wilian sexually abused the cousins. (See *In re Carlos T.* (2009) 174 Cal.App.4th 795, 806 [substantial evidence supported jurisdiction findings under section 300, subdivisions (b), (d), and (j), where the father denied he abused his son, and the mother refused to accept responsibility for failing to protect the children].)[3] After Wilian's arrest, when the

---

[3]    In *In re Carlos T.*, *supra*, 174 Cal.App.4th 795 the court concluded that, because the mother knew the father sexually abused their daughter, the juvenile court could reasonably infer the mother should have suspected he was also sexually abusing their son. (*Id.* at pp. 804-805.) Norma attempts to distinguish *Carlos T.* by arguing there was no evidence Wilian sexually abused Wilian Jr. or Martha. But Wilian repeatedly abused Cataleya and Ashlyne while they were living under the same roof as his children, and the juvenile court found Norma knew of the

14

Department social worker asked Norma if Wilian inappropriately touched Cataleya and Ashlyne, Norma said, "No." When asked if she believed the allegations against Wilian could be true, Norma said, "I can't say because I did not see," and "I am not sure if it's possible, maybe they invented it or their mom did." When asked her thoughts on the cousins' accounts of the abuse, Norma responded, "I don't know what happened, I don't spend time with them and the mom . . . is not a good mom. Their mom isn't even married to their dad, to my knowledge she left their dad." Norma's refusal to acknowledge the abuse Wilian committed and the risk his conduct posed further supported the juvenile court's findings. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[d]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["'[o]ne cannot correct a problem one fails to acknowledge"].)

Substantial evidence also supported the court's finding Norma knew of or suspected the sexual abuse before Wilian was arrested. Norma repeatedly claimed she did not know or suspect any sexual abuse until Wilian's arrest. But when asked if Norma knew about the allegations two years before his arrest, Wilian said, "Yes . . . I . . . told her and she said I had to speak up because I was being accused for something I did not do. With my wife I have communication and we get along. I was able to explain things to her." And even if Norma did not learn of the abuse until after Wilian was arrested, that knowledge did not

abuse. (See *id.* at p. 805 ["[g]iven her knowledge that father was a sexual predator, it was reasonable for the court to infer that mother should have suspected that father also was sexually abusing their son"].)

15

deter her from saying she would allow Wilian to return home. After Wilian's arrest Norma told the Department social worker: "I don't know if . . . they will allow him to be with us. But if he is allowed, we will keep working together." Nor did learning Wilian had shown the cousins pornography change Norma's opinion of Wilian; she remained unwilling to restrict his access to the children.

Norma's argument there was no evidence Wilian abused his children is meritless. Subdivisions (b) and (d) of section 300 do not require the parent to abuse the child named in the petition. (See *In re I.J.* (2013) 56 Cal.4th 766, 773 [subdivisions (b), (d), and (j) of section 300 require "only a 'substantial risk' that the child will be abused or neglected"].) The juvenile court did not have to wait until Wilian abused Wilian Jr. and Martha to assume jurisdiction and take steps to protect them. (See *I.J.*, at p. 773; *In re E.E.* (2020) 49 Cal.App.5th 195, 212-213.) Given Wilian's sexual interest in young relatives, the court reasonably inferred Norma should have suspected Wilian could also abuse their children. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior."]; *In re Ana C., supra,* 204 Cal.App.4th at p. 1332 [father's conduct "has been 'so sexually aberrant' to support the commonsense conclusion that most every person in the family home was at risk of sexual abuse"]; *In re Y.G., supra*, 175 Cal.App.4th at p. 116 [section 300, subdivision (b), permits "a finding of danger to the parent's child based on evidence of conduct with an unrelated child"].)

Norma argues there was no "current risk" of harm under section 300, subdivision (b), at the time of the jurisdiction hearing because Wilian had been deported to El Salvador and had no

16

reasonable prospects of returning.  Section 300, subdivision (d), unlike section 300, subdivision (b), however, does not require a finding of current risk at the time of the jurisdiction hearing (*In re Carlos T.*, *supra*, 174 Cal.App.4th at p. 803), and one basis for jurisdiction is enough (*In re D.P.*, *supra*, 14 Cal.5th at p. 283; *In re M.D.* (2023) 93 Cal.App.5th 836, 852).  Moreover, Wilian's absence did not eliminate the risk.  (See *Carlos T.*, at p. 806 [if the incarcerated father were "released from custody . . . there is every reason to believe [he] would resume his sexual abuse of [his children] without the state intervening to prevent him from obtaining access to them"].)  Deportation, like incarceration, is a barrier to access, but not a permanent one, and it is not a substitute for a parent's protection.  And Norma indicated that, if Wilian returned, she would allow him to be with the children.

17

## DISPOSITION

The jurisdiction findings and disposition orders are affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.